IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-215

 No. COA21-91

 Filed 5 April 2022

 Mecklenburg County, Nos. 17CRS243898, 17CRS243899, 17CRS243900,
 19CRS028359

 STATE OF NORTH CAROLINA

 v.

 RICHARD HENRY JORDAN, JR.

 Appeal by Defendant from judgments entered 28 January 2020 by Judge

 Daniel A. Kuehnert in Mecklenburg County Superior Court. Heard in the Court of

 Appeals 3 November 2021.

 Patterson Harkavy LLP, by Christopher A. Brook, for Defendant-Appellant.

 Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L.
 Hyde, for the State-Appellee.

 COLLINS, Judge.

¶1 Defendant Richard Henry Jordan, Jr., appeals from judgments entered upon

 guilty verdicts of possession of a firearm by a felon, possession of drug

 paraphernalia, and trafficking in cocaine, and a plea of guilty to attaining habitual

 felon status. Defendant argues that the trial court erred by denying his motion to

 suppress evidence gathered by police officers following their warrantless entry into

 a private residence. We reverse the trial court’s denial of Defendant’s motion to
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 suppress and remand the matter for further proceedings.

 I. Background

¶2 On 21 November 2017, the Charlotte Mecklenburg Police Department

 received a report of a stolen Infiniti car. One of the car’s co-owners told officers that

 he suspected his girlfriend had taken the car and gave the officers the location of a

 house where she might be found.

¶3 At around midnight, Officer Patrick White and Officer Williams1 responded

 to the house in an unmarked police vehicle. The house contained a salon and a

 residence which were separated by sealed doors. White and Williams drove down a

 driveway on the right side of the house, passed a door, and reached a gravel parking

 lot in the rear. The officers saw at least four cars parked there, including the

 Infiniti which had been reported stolen. White and Williams positioned their car so

 they could watch the Infiniti.

¶4 Shortly after arriving, White observed a man who White would later identify

 as Marcel Thompson “come around from the side of the residence where the door

 was,” walk “right up to the driver’s side door of the” Infiniti, “and kind of square[]

 up on the door as if he was going to go inside of the vehicle.” White observed

 Thompson look up at the patrol car, stand “there for a second and stare[] directly at

 [the patrol car], and then immediately turn[] away from the car and [begin] walking

 1 Officer Williams did not testify at the suppression hearing or at trial.
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 quickly back down towards the side of the residence.” White radioed Officers Erik

 Tran-Thompson and Jonathan Brito, who were in a marked patrol car nearby, to

 move in and detain Thompson. White explained that he wanted to stop Thompson

 because he and Williams “believed that [Thompson] was taking possession of the

 stolen motor vehicle at that time.”

¶5 White and Williams pulled their patrol car into the driveway and saw

 Thompson standing at the door of the residence, appearing to “knock[] on the door

 hastily.” When Williams opened the door of the patrol car, White heard Thompson

 “say either, ‘it’s the police’ or ‘police, police,’ as he knocked on the door.” Tran-

 Thompson and Brito entered the driveway and activated the blue lights of their

 patrol car while Thompson was still outside the residence. Brito also saw

 Thompson seeking to enter the residence, and Tran-Thompson heard Thompson

 yell, “It’s the police!”

¶6 Williams, followed by Brito, approached Thompson while White and

 Tran-Thompson went to the parking lot to check the Infiniti. Defendant opened the

 door of the residence from inside; Thompson stepped inside but left the door open.

 Brito testified that Williams was speaking with Thompson while Thompson was in

 the open doorway. According to Brito, Williams said, “We need to talk to you. Come

 out here” immediately prior to entering the residence. Williams stepped into the

 residence and after 30 to 45 seconds indicated to Brito that the officers had enough

 to “lock it down.” According to Brito, this meant that Williams believed the officers
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 had probable cause to seek a search warrant. At that time, Brito saw Defendant

 “standing next to [a] safe[,] close the safe, lock it with a key, and put the key in his

 pocket.”

¶7 Officer Scottie Carson and Officer Turner2 arrived in the third patrol car on

 the scene. When Carson and Turner arrived, Williams was already inside the

 residence, “around the corner into the bedroom,” and speaking with a woman; Tran-

 Thompson was at the doorway; and Brito was at the table. Carson saw the door to

 the residence was open and observed a table inside with a razor blade, white

 powdery residue, baggies, and a safe on top. Tran-Thompson later confirmed that

 these items were “visible from the doorway.” Carson entered the residence “because

 [he] could see how many individuals that were not law enforcement officers [were]

 inside” and there was “what appeared to [him] to be narcotics and narcotics

 paraphernalia[.]” Upon entering the residence, Carson saw Thompson directly in

 front of the door, Defendant standing, and an older man seated.

¶8 Carson went further into the residence toward the bedroom and bathroom

 because his “immediate thought” upon entering “was to go into [the] back room and

 clear it.” Carson testified that he saw a firearm at the head of the bed and the

 officers “decided that [they] were definitely going to have to lock everything down.”

 Carson elaborated that “[t]o lock everything down” meant to “get consent from the

 2 Officer Turner did not testify at the suppression hearing or at trial.
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 homeowner,” prohibit those present from leaving, and refrain from touching or

 moving anything.

¶9 Brito testified that the officers did not determine who leased the residence

 until after the officers had entered the residence and “everybody was aware that

 [the officers] were locking it down.” Body-worn camera footage shows the officers

 asked who lived in the residence after at least two officers had already entered.

 Tran-Thompson, Carson, and Brito each testified that the older man, Mr. Deitz,

 either leased or owned the residence.3

¶ 10 Carson and Tran-Thompson testified that Deitz gave the officers consent to

 search the residence. Brito’s body-worn camera footage, portions of which were

 played at the suppression hearing, shows that Deitz did not answer when Williams

 initially asked for consent to search the residence. Instead, Deitz asserted that

 anything the officers might find belonged to a woman who was in the residence.

 When Williams again asked for consent to search the residence, Deitz stated that he

 was not giving the officers permission to search. Williams responded, “Well, in that

 case, . . . we’re just gonna put everybody in handcuffs real quick, none of y’all are

 under arrest, you’re just detained. And we’re just gonna go ahead and get a search

 warrant, okay.” Only then did Deitz interject, “Oh, well, you can search it then.

 3 The record contains multiple spellings of the occupant’s name. We use this spelling
 to maintain consistency. Additionally, because the record is unclear as to whether Deitz
 was the owner or lessee of the residence, we refer to him as the occupant of the residence.
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 You ain’t got to handcuff nobody.” On the witness stand, Carson explained that

 Deitz refused to give the officers consent to search the safe because it did not belong

 to him. The officers placed the four persons in the residence in handcuffs.

¶ 11 The officers asked Defendant whether he stayed or lived at the residence;

 Brito recalled that Defendant “pretty much said something to the line of, ‘Well, I

 don’t have anything to do with anything that’s in here. I don’t live here. This has

 nothing to do with me.’” Brito did not “see any clothing items or overnight bags that

 belonged” to Defendant but could not tell whether the other officers had “found

 clothing or suitcases that belonged” to Defendant.

¶ 12 Regarding the safe, Defendant told the officers that they “didn’t have a

 warrant” and “didn’t have a reason to search the safe.” Defendant stated that the

 safe did not belong to him, though Brito saw Defendant lock the safe and put the

 key in his pocket, and Carson later saw Defendant remove the key from his pocket.

 Later that night, the woman suspected of stealing the car told the officers that the

 safe belonged to Defendant.

¶ 13 When the officers could not get consent to search the safe from the four

 persons in the residence, they applied for and received a warrant to search the

 residence, including the safe. Upon executing the warrant, the officers seized

 cocaine, a pistol, and currency from inside the safe, and baggies, syringes, a digital

 scale, and a razor blade from beside the safe. Defendant was taken into custody

 and subsequently indicted for trafficking cocaine, possession of a firearm by a felon,
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 possession of drug paraphernalia, and attaining habitual felon status.

¶ 14 Prior to trial, Defendant moved to suppress all evidence gathered by the

 officers on 22 November 2017 as a result of their entry into the residence.

 Following a hearing, the trial court denied Defendant’s motion to suppress. Though

 the trial court directed the State to prepare a written order, the record reflects that

 the trial court never entered a written order denying Defendant’s motion to

 suppress.

¶ 15 In announcing its ruling from the bench, the trial court stated as follows:4

 [I]n this particular case, you’ve got a car that was
 reported stolen. There was an idea of where the car may
 be. The police . . . drove behind the location of where the
 report indicated the car might be. There were four cars
 behind the building in question that looks like a residence
 but it was part residence, part commercial enterprise.
 They saw four cars. One of the cars met the description of
 the stolen car.

 While they were there, a short -- very short time,
 an individual came out to -- looked like they were going to
 get into the car. They had actually touched the car. And
 as the officer testified, it looked as if he was going to enter
 the car and then noticed police and even used -- said the
 word “police” as he came back to the door to the
 residential part of the structure, knocked on the door.

 When the other marked cars -- the first car that he
 saw was not marked. And the other cars that came up
 with a marked car with marked uniformed officers, he

 4 Given the nature of the trial court’s announced ruling from the bench, and without

 having entered a written order in this case, it is somewhat difficult to discern between the
 trial court’s thoughts generally regarding the evidence and the findings of fact and
 conclusions of law it intended to make.
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

entered the residence. The individual had a red hoodie
and I think was Mr. Thompson, not the defendant. The
door was left open. And Officer Williams approached the
door, put his foot through the threshold, at least one foot,
spoke to the individual. It was raining outside, asked the
individual if he wanted to come outside to talk.

 The officers felt like that there was at least a
scintilla of evidence, some evidence that the Mr.
Thompson had possessed the stolen automobile, however
briefly. They at least wanted to detain Mr. Thompson
and talk to him about his involvement with the stolen
motor vehicle that he had just walked away from and
actually kind of hurriedly ran or jogged away from when
[he] saw the police officers.

 The officer, because the indication was that the Mr.
Thompson didn’t want to go outside in the rain, the
circumstances as described by the officers seemed to
indicate that Mr. Thompson would rather have the officer
come inside out of the rain to talk to him, which he did.

 The other officers, for safety reasons, approached.
And a very short time while they were talking . . . the
other officer that came in, saw the -- testified that he saw
what looked to be cocaine or crystal-and-powder type
substance with a razor and baggies or something similar
material that looked like somebody had been cutting
drugs, I think it turned out to be heroin, which led to
further discussion, a protective sweep.

 At some point early on, the owner of the residence,
an older gentleman who leased the residence or owned it,
gave consent. There was no time -- early on -- but no time
did the defendant indicate that he had any kind of
expectation of privacy and interest in the property where
he had -- didn’t want the officers to go, needed to get a
warrant, that sort of thing.

 The officers acted reasonably with a protective . . .
sweep. . . . They were not doing any of this as a pretext.
This house had not been previously -- this location had
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 not been previously targeted. So there was no pretext
 indicated.

 And, later, because there were -- after the obvious
 plain view drugs, looked to be drugs, were seen, a warrant
 or warrants were issued to -- with regard to . . . the safe
 that nobody claimed ownership of.

 That’s some of the evidence that was presented and
 as the Court recalls it . . . it’s similar to United States
 versus Santana. Some connection similar there.

 There is also an argument . . . that there’s actually
 circumstances when the defendant was fleeing referring
 to State versus Rigara. . . . [B]ut more accurately, I think
 the officers had a reasonable justification to detain the
 Mr. Thompson and to have him stopped. He didn’t stop.
 And there would have been a heightened concern of
 potential loss of evidence or something nefarious afoot.
 He was touching the stolen car and then escaped, was
 trying to make his escape or flight away from the police
 officer and into . . . the residence. And so there was
 certainly justification to detain and talk with the
 individual.

 And being that the owner of the residence made no
 indication whatsoever that the officers could not come in
 out of the rain, especially with the door open. There was
 never a time that I noticed that the door was actually
 closed to the officers. There was no attempt to close it.
 And there is no other arguments that could be made from
 the State’s case that the door was left open for their entry.

¶ 16 Defendant was tried before a jury, which returned guilty verdicts of

 trafficking of cocaine, possession of a firearm by a felon, and possession of drug

 paraphernalia. Defendant pled guilty to attaining habitual felon status. The trial

 court sentenced Defendant to consecutive terms of 124 to 161 and 101 to 134
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 months in prison.5 Defendant gave notice of appeal in open court.

 II. Discussion

¶ 17 Defendant argues that the trial court erred by denying his motion to

 suppress. Our review of a trial court’s ruling on a motion to suppress is limited to

 “whether competent evidence supports the trial court’s findings of fact and whether

 the findings of fact support the conclusions of law.” State v. Biber, 365 N.C. 162,

 167-68, 712 S.E.2d 874, 878 (2011) (citation omitted). Unchallenged findings are

 deemed supported by competent evidence and are binding on appeal. Id. at 168,

 712 S.E.2d at 878. We review conclusions of law de novo. Id.

 A. Challenged Findings of Fact

¶ 18 Defendant initially contends that portions of two of the trial court’s findings

 of fact are unsupported by competent evidence. First, Defendant challenges the

 finding that Defendant “didn’t want the officers to go, needed to get a warrant, that

 sort of thing” to the extent that it “suggests [Defendant] did not object to the

 warrantless entry.” While this finding is unclear, it does not state that Defendant

 did not object to the warrantless entry. Defendant’s challenge to this finding is

 without merit.

¶ 19 Next, Defendant challenges the trial court’s finding that “the indication was

 that . . . Mr. Thompson didn’t want to go outside in the rain” and “the circumstances

 5 The trial court also sentenced Defendant to 30 to 48 months in prison for another

 drug possession conviction in No. 18 CRS 206212, which Defendant has separately
 appealed to this Court.
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 as described by the officers seemed to indicate that Mr. Thompson would rather

 have the officer come inside out of the rain to talk to him, which he did.” Defendant

 contends that this finding is not supported by competent evidence to “the extent [it]

 suggests Mr. Thompson consented to the officers’ warrantless entry.” Again, while

 this finding is unclear, it does not state that Thompson invited the officers in or

 otherwise consented to the warrantless entry. Defendant’s challenge to this finding

 is also without merit.

 B. Reasonable Expectation of Privacy

¶ 20 Defendant argues that the trial court’s findings of fact and conclusions of law

 do not support denial of the motion to suppress for lack of standing to challenge the

 search. The State argues, on the other hand, that the trial court did not err in

 denying Defendant’s motion to suppress because Defendant failed to show a

 reasonable expectation of privacy in the residence, and therefore was not entitled to

 challenge the search.

¶ 21 “‘Fourth Amendment rights are personal rights which . . . may not be

 vicariously asserted.’” Plumhoff v. Rickard, 572 U.S. 765, 778 (2014) (quoting

 Alderman v. United States, 394 U.S. 165, 174 (1969)). The “capacity to claim the

 protection of the Fourth Amendment depends . . . upon whether the person who

 claims the protection . . . has a legitimate expectation of privacy in the invaded
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 place.”6 Rakas v. Illinois, 439 U.S. 128, 143 (1978) (citations omitted). A legitimate

 expectation of privacy requires “two components: (1) the person must have an actual

 expectation of privacy, and (2) the person’s subjective expectation must be one that

 society deems to be reasonable.” State v. Wiley, 355 N.C. 592, 602, 565 S.E.2d 22, 32

 (2002) (citation omitted). The defendant has the burden of showing such an

 expectation of privacy. State v. Mlo, 335 N.C. 353, 377, 440 S.E.2d 98, 110 (1994);

 State v. Barnes, 158 N.C. App. 606, 612, 582 S.E.2d 313, 318 (2003).

¶ 22 It is “well established that a person need not always have a recognized

 common-law property interest in the place searched to be able to claim a reasonable

 expectation of privacy in it.” Byrd, 138 S. Ct. at 1527 (citations omitted); see also

 State v. Alford, 298 N.C. 465, 471, 259 S.E.2d 242, 246 (1979) (same). A place need

 not be a person’s home “for one to have a legitimate expectation of privacy there.”

 Minnesota v. Olson, 495 U.S. 91, 96 (1990). An overnight guest has a reasonable

 expectation of privacy in a residence sufficient to claim the protection of the Fourth

 Amendment. Id. at 96-97. So too may certain social guests. See, e.g., United States

 v. Gray, 491 F.3d 138, 153 (4th Cir. 2007) (“[W]e have recognized that persons other

 6 Courts often denote this inquiry as whether a defendant has “standing” to press a

 Fourth Amendment claim. “The concept of standing in Fourth Amendment cases can be a
 useful shorthand for capturing the idea that a person must have a cognizable Fourth
 Amendment interest in the place searched before seeking relief for an unconstitutional
 search[.]” Byrd v. United States, 138 S. Ct. 1518, 1530 (2018). However, the Supreme
 Court has explained that this analysis “is not distinct from the merits” of a Fourth
 Amendment Claim but “‘is more properly subsumed under substantive Fourth Amendment
 doctrine.’” Id. (quoting Rakas, 439 U.S. at 139).
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 than overnight guests can have a legitimate expectation of privacy in the home of

 another,” typically “in the context of social visitors with near-familial

 relationships”); Bonner v. Anderson, 81 F.3d 472, 475 (4th Cir. 1996) (frequent

 visitor with close relationship to homeowner, whose relative was raised in home,

 and who formerly lived nearby, had reasonable expectation of privacy in home). But

 a person’s “legitimate presence on the premises of the place searched, standing

 alone, is not enough to accord a reasonable expectation of privacy”; this would be

 “too broad a gauge for measurement of Fourth Amendment rights.” Byrd, 138 S. Ct.

 at 1527 (quotation marks and citations omitted).

¶ 23 The evidence presented at the suppression hearing does not support a finding

 that Defendant lacked a reasonable expectation of privacy in the residence

 searched. Defendant was one of four persons present in the residence late at night.

 Officer Tran-Thompson testified that Defendant opened the door from inside the

 residence when Thompson knocked, indicating that Defendant had some authority

 over who would be admitted to the residence. The evidence further suggests that

 Defendant owned the safe and had permission to keep it in the residence. Taken

 together, this evidence demonstrates that Defendant had more than a mere

 “legitimate presence on the premises of the place searched[.]” Byrd, 138 S. Ct. at

 1527.

¶ 24 The State emphasizes that Defendant did not own or lease the residence, but

 this does not conclusively determine that Defendant lacked a reasonable
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

expectation of privacy in the premises. Alford, 298 N.C. at 471, 259 S.E.2d at 246.

The State also argues that Defendant “disclaimed any possessory interest in the

premises and in the safe in particular.” It is well established that a “reasonable

expectation of privacy in real property may be surrendered . . . if the property is

permanently abandoned.” State v. McKinney, 361 N.C. 53, 56, 637 S.E.2d 868, 871

(2006). But Defendant did not deny his connection with the residence and disclaim

ownership of the safe until after the officers effected their warrantless entry into

the residence and detained its occupants. “[W]hen an individual ‘discards property

as the product of some illegal police activity, he will not be held to have voluntarily

abandoned the property or to have necessarily lost his reasonable expectation of

privacy with respect to it[.]’” State v. Holley, 267 N.C. App. 333, 347, 833 S.E.2d 63,

75 (2019) (quoting State v. Cromartie, 55 N.C. App. 221, 225, 284 S.E.2d 728, 731

(1981)); see also State v. Borders, 236 N.C. App. 149, 165, 762 S.E.2d 490, 503 (2014)

(“[P]roperty may not be abandoned if it is done as a direct result of a law

enforcement officer’s illegal search or seizure.”); United States v. Leshuk, 65 F.3d

1105, 1111 (4th Cir. 1995) (“[A] person does not voluntarily abandon property when

the abandonment results from police misconduct[.]”). Additionally, while Defendant

denied ownership of the safe and asserted that he did not “have anything to do with

anything” in the residence, Defendant nonetheless exercised the power to exclude

others from the safe by locking it and putting the key in his pocket. See State v.

Casey, 59 N.C. App. 99, 114, 296 S.E.2d 473, 482 (1982) (holding defendant did not
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 relinquish expectation of privacy in plastic bags, despite denying ownership of

 them, because he maintained the “right to exclude all others from the bags by virtue

 of his right of possession and control”).

¶ 25 The record does not support a finding of fact that Defendant lacked a

 reasonable expectation of privacy in the residence. Accordingly, Defendant may

 challenge the search of the residence.

 C. Warrantless Entry into the Residence

¶ 26 “Upon timely motion, evidence must be suppressed if . . . [i]ts exclusion is

 required by the Constitution of the United States or the Constitution of the State of

 North Carolina[.]” N.C. Gen. Stat. § 15A-974(a)(1) (2020). The exclusionary rule

 “provides that evidence derived from an unconstitutional search or seizure is

 generally inadmissible in a criminal prosecution of the individual subjected to the

 constitutional violation.” McKinney, 361 N.C. at 58, 637 S.E.2d at 872 (citations

 omitted).

¶ 27 The Fourth Amendment guards the “right of the people to be secure in their

 persons, houses, papers, and effects, against unreasonable searches and seizures[.]”

 U.S. Const. amend. IV. “It is a basic principle of Fourth Amendment law that

 searches and seizures inside a home without a warrant are presumptively

 unreasonable.” Payton v. New York, 445 U.S. 573, 586 (1980) (quotation marks and

 citations omitted). But “because the ultimate touchstone of the Fourth Amendment

 is ‘reasonableness,’ the warrant requirement is subject to certain exceptions.”
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 Brigham City v. Stuart, 547 U.S. 398, 403 (2006). “[E]xceptions to the warrant

 requirement are few in number and carefully delineated.” Welsh v. Wisconsin, 466

 U.S. 740, 749 (1984) (quotation marks and citation omitted).

 1. Exigent Circumstances

¶ 28 One “well-recognized exception” to the warrant requirement “applies when

 the exigencies of the situation make the needs of law enforcement so compelling

 that a warrantless search is objectively reasonable under the Fourth Amendment.”

 Kentucky v. King, 563 U.S. 452, 460 (2011) (quotation marks, brackets, and citations

 omitted). The Supreme Court has identified several situations which may amount

 to exigent circumstances sufficient to justify a warrantless entry into a home,

 including the need “to render emergency assistance to an injured occupant or to

 protect an occupant from imminent injury,” Brigham City, 547 U.S. at 403 (citations

 omitted); the need to prevent the imminent destruction of evidence, King, 563 U.S.

 at 460; and the hot pursuit of a fleeing suspect, Lange v. California, 141 S. Ct. 2011,

 2024 (2021); United States v. Santana, 427 U.S. 38, 42-43 (1976). Courts assess

 whether a warrantless entry was justified by exigent circumstances based on the

 totality of the circumstances. Lange, 141 S. Ct. at 2018; Riley v. California, 573

 U.S. 373, 402 (2014). “Whether a now or never situation actually exists—whether

 an officer has no time to secure a warrant—depends upon facts on the ground.”

 Lange, 141 S. Ct. at 2018 (quotation marks and citations omitted).

¶ 29 The State argues that exigent circumstances justifying the officers’
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 warrantless entry into the residence “existed in the potential destruction of

 evidence and Mr. Thompson’s attempted flight.” But, as Defendant argues, the trial

 court erred by concluding that only a reasonable suspicion to detain Thompson

 justified the warrantless entry into the residence in pursuit of Thompson. The trial

 court concluded that “there was certainly justification to detain and talk with”

 Thompson and the officers “had a reasonable justification to detain [Thompson] and

 to have him stopped.” However, warrantless entry into a home in pursuit of a

 suspect is permissible only where the officers have probable cause. See, e.g., Kirk v.

 Louisiana, 536 U.S. 635, 638 (2002) (per curiam) (“[P]olice officers need either a

 warrant or probable cause plus exigent circumstances in order to make a lawful

 entry into a home.”); State v. Adams, 250 N.C. App. 664, 670, 794 S.E.2d 357, 362

 (2016) (“A warrantless arrest in the home may be reasonable where there is

 probable cause and exigent circumstances.”).

¶ 30 “[P]robable cause is defined as those facts and circumstances within an

 officer’s knowledge and of which he had reasonably trustworthy information which

 are sufficient to warrant a prudent man in believing that the suspect had

 committed or was committing an offense.” State v. Parisi, 372 N.C. 639, 650, 831

 S.E.2d 236, 244 (2019) (quotation marks and citation omitted). Whether probable

 cause existed depends on the totality of the circumstances. Id. Reasonable

 suspicion cannot be substituted for probable cause. Alabama v. White, 496 U.S.

 325, 330 (1990); State v. Johnson, 378 N.C. 236, 2021-NCSC-85, ¶ 16.
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

¶ 31 Although the trial court did not conclude that the officers had probable cause

 to arrest Thompson, the State contends that the officers in fact had probable cause

 to arrest Thompson for felony possession of a stolen vehicle. This argument is

 unavailing because neither the trial court’s findings nor the underlying record

 support such a conclusion. The trial court found only that Thompson “looked like

 [he was] going to get into” the stolen car, “was touching the stolen car,” 7 saw the

 patrol car, “and then escaped, was trying to make his escape or flight away from the

 police officer and into the residence.” The State presented no other evidence

 connecting Thompson to the car, nor any evidence suggesting that Thompson knew

 or had reason to believe the car was stolen. See N.C. Gen. Stat. § 20-106 (2017)

 (recodified at N.C. Gen. Stat. § 14-71.2) (providing that any person “who has in his

 possession any vehicle which he knows or has reason to believe has been stolen or

 unlawfully taken, and who is not an officer of the law engaged at the time in the

 performance of his duty as such officer shall be punished as a Class H felon”).

¶ 32 The State contends that the officers were faced with the potential destruction

 of evidence in “either the car keys or the drug paraphernalia officers observed

 through the door.” While the State presented evidence that the drug paraphernalia

 might be seen through the open front door, it did not present evidence that Williams

 was actually aware of its presence and concerned for its potential destruction in his

 7 Though Defendant does not challenge this finding on appeal, we note that there

 was no evidence that Thompson touched the stolen Infiniti.
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

brief time at the door prior to entering the residence. As to the car keys, the State

has failed to offer a credible explanation of how this evidence would be readily

destructible such that the officers’ immediate entry was necessary. See King, 563

U.S. at 461 (“Destruction of evidence issues probably occur most frequently in drug

cases because drugs may be easily destroyed by flushing them down a toilet or

rinsing them down a drain.”). The State contends that Thompson’s ability to put

the car keys down presented a risk of destroying the evidentiary link between

Thompson’s possession of the keys and the stolen Infiniti. The State suggested at

argument that the officers’ ability to enter the residence and conduct a search to

prevent this from happening would be “beneficial” to a subsequent prosecution for

possession of the stolen vehicle. The State’s argument fails in part because in a

prosecution for possession of a stolen vehicle, the State may proceed on a theory of

constructive possession or recent possession, notwithstanding a lack of actual

possession of a stolen vehicle or its keys. See, e.g., State v. McNair, 253 N.C. App.

178, 187, 799 S.E.2d 631, 639 (2017) (“Under the theory of constructive possession,

a person may be charged with possession of an item . . . when he has both the power

and intent to control its disposition or use, even though he does not have actual

possession.” (quoting State v. Davis, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989)).

More fundamentally, the State’s theory of imminent destruction of evidence is not

borne out by the facts of this case: Williams entered the residence just moments

after arriving at the front door. Thompson had not slammed the door behind
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 himself, to the contrary, he had left the door open and was talking to Williams

 immediately before Williams entered.

¶ 33 The totality of the circumstances in the present case does not reveal exigent

 circumstances sufficient to justify the officers’ warrantless entry into the private

 residence.

 2. Consent

¶ 34 Another “of the specifically established exceptions to the requirements of both

 a warrant and probable cause is a search that is conducted pursuant to consent.”

 Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (citations omitted). The State

 acknowledges in its brief that the trial court did not find that Thompson consented

 to the officers’ entry. Instead, the State argues that the trial court did not err in

 denying the motion to suppress because Deitz, the occupant of the residence, gave

 consent.

¶ 35 The record is clear, however, that the officers did not determine Deitz was the

 occupant of the residence, speak with him, or gain his consent to search the

 residence until after they had illegally entered the residence without a warrant.

 Accordingly, the subsequent consent to search can justify the denial of Defendant’s

 motion to suppress only if the taint from the officers’ initial warrantless entry had

 dissipated. Courts consider three factors in determining whether the taint from an

 illegal search has dissipated: (1) the time elapsed between the Fourth Amendment

 violation and the procurement of consent or confession; (2) the presence of
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 intervening circumstances; and (3) the purpose and flagrancy of the official

 misconduct. Brown v. Illinois, 422 U.S. 590, 603-04 (1975).

¶ 36 Here, the officers entered a private residence, without a warrant or probable

 cause, within seconds of engaging Thompson at the door. Such “physical entry of

 the home is the chief evil against which the wording of the Fourth Amendment is

 directed[.]” United States v. United States Dist. Ct., 407 U.S. 297, 313 (1972). The

 record demonstrates that the officers secured Deitz’s consent closely on the heels of

 their entry into residence and their decision to “lock it down,” which Carson

 testified included prohibiting those present from leaving. According to Brito,

 Williams decided that the officers would lock down the residence just 30 to 45

 seconds after entering. Carson testified that the officers placed the four individuals

 in handcuffs and informed them that they would be detained until the officers

 obtained a warrant. The record does not reflect any other intervening

 circumstances between the officers’ entry into the residence and Deitz’s

 acquiescence in the search which would attenuate the taint of the officers’ illegal

 entry. Because the taint of the initial illegal entry had not dissipated, Deitz’s

 consent to search cannot justify the officers’ warrantless entry into and search of

 the residence.

 3. Search Pursuant to Warrant

¶ 37 Lastly, the State argues that the trial court did not err in denying the motion

 to suppress because Defendant was charged based on items found in the safe, which
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 was searched pursuant to a warrant. The State contends that the search of the safe

 pursuant to the warrant was not tainted by any illegal police conduct because the

 officers saw the drugs and drug paraphernalia inside the residence in plain view

 while they were still outside the doorway.

¶ 38 If information in an affidavit of probable cause that was “used to obtain a

 search warrant was procured through an unconstitutional [search], the warrant and

 the search conducted under it were illegal and the evidence obtained from them was

 fruit of the poisonous tree.” McKinney, 361 N.C. at 59, 637 S.E.2d at 872-73

 (quotation marks, brackets, ellipsis, and citation omitted). Evidence seized

 pursuant to a search warrant will not be excluded, however, if the facts in the

 affidavit independent of those gathered due to the unlawful police conduct gave rise

 to probable cause. Id. at 59, 637 S.E.2d at 873. In such a case, the challenged

 evidence is not a fruit of the unlawful police conduct, but the product of an

 untainted independent source. See Segura v. United States, 468 U.S. 796, 814

 (1984) (declining to exclude evidence seized pursuant to a search warrant where

 “[n]one of the information on which the warrant was secured was derived from or

 related in any way to” the allegedly unlawful initial entry into an apartment).

¶ 39 Here, Tran-Thompson averred that there was probable cause to believe that

 certain evidence of heroin possession and possession of drug paraphernalia would be

 found both in the residence and on the persons of Defendant and Deitz. Tran-

 Thompson recounted the following facts and circumstances in support of this
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 assertion: (1) Defendant locking the safe upon the officers’ entry, (2) apparent drug

 paraphernalia on a table “in the main living area,” (3) a metal tin on the bed

 containing a spoon with residue of white powder, (4) drugs and paraphernalia on

 Thompson’s person, (5) a handgun behind the bed, and (6) syringes in a linen closet.

 Each of these observations was the fruit of the officers’ unlawful warrantless entry

 into the residence. The trial court did not find—and the State did not present any

 evidence—that the officers made any of these observations prior to entering the

 residence. The State’s evidence merely suggesting that it was possible to observe

 some drug paraphernalia through the open doorway, absent evidence that any of

 the officers indeed saw the items before entering, fails to demonstrate that this

 information was obtained independent of the officers’ unlawful warrantless entry

 into the residence.

¶ 40 The remaining information in the affidavit untainted by the officers’

 warrantless entry concerned the report of the stolen car, the presence of the stolen

 car in the back parking lot, Thompson’s approach to the stolen car, and Thompson’s

 return to the residence. This information fails to establish probable cause to search

 the residence, Deitz, or Defendant for evidence of possession of heroin and drug

 paraphernalia.8 See State v. Frederick, 259 N.C. App. 165, 170, 814 S.E.2d 855, 859

 8 The search warrant in the present case provided only for the seizure of certain
 evidence of possession of drugs and drug paraphernalia. Because “[t]he scope of a search is
 generally defined by its expressed object,” Florida v. Jimeno, 500 U.S. 248, 251 (1991)
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

 (“[A]n affidavit is sufficient to establish probable cause ‘if it supplies reasonable

 cause to believe that the proposed search for evidence probably will reveal the

 presence upon the described premises of the items sought and that those items will

 aid in the apprehension or conviction of the offender.’” (quoting State v. Arrington,

 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984))), aff’d per curiam, 371 N.C. 547, 819

 S.E.2d 346 (2018).

¶ 41 Because the affidavit supporting the issuance of the search warrant, stripped

 of the facts obtained by the officers’ unlawful entry into the residence, does not give

 rise to probable cause to search the residence for the evidence of drugs and drug

 paraphernalia described in the warrant, “the warrant and the search conducted

 under it were illegal and the evidence obtained from them was fruit of the poisonous

 tree.” McKinney, 361 N.C. at 59, 637 S.E.2d at 872-73 (quotation marks and

 citations omitted).

 III. Conclusion

¶ 42 Defendant did not lack a reasonable expectation of privacy in the residence.

 Exigent circumstances did not justify the officers’ warrantless entry into the

 residence, and the taint of the initial warrantless entry is not removed from either

 the occupant’s after-the-fact consent to search the residence or the subsequent

 warrant to search the residence and the safe. The trial court therefore erred by

 (citation omitted), we need not address whether the affidavit established probable cause to
 search the residence for evidence of any other offense.
 STATE V. JORDAN

 2022-NCCOA-215

 Opinion of the Court

denying Defendant’s motion to suppress evidence obtained as a result of the officers’

entry into the residence.

 REVERSED AND REMANDED.

 Judges HAMPSON and CARPENTER concur.